No. 54.—The Lessee of EDGAR GARLICK, plaintiff in error, *vs.* JOHN ROBINSON, defendant in error.

[1.] Land is sold under execution, as the property of the defendant in *fi. fa.* before the grant had issued : *Held,* that the interest of the defendant in the land, was not such as to be subject to levy and sale, and the purchaser at the sale acquired no title to the land.

Ejectment, in Floyd Superior Court. Tried before Judge JOHN H. LUMPKIN. August Term, 1852.

This was an action of ejectment, brought by the lessee of Edgar Garlick, against John Robinson. The defendant claimed under a Sheriff's deed. The whole case turned upon the single question, whether a Sheriff can levy on, and sell a tract of land before the grant issues to the defendant *in fi. fa.,* and upon the issuing of the grant subsequent to the sale, whether the purchaser has a valid title.

The Court held that the title of the purchaser was legal and valid, and this decision is assigned as error.

JOSEPH E. BROWN, for plaintiff in error.

J. W. H. UNDERWOOD, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The sole question made in this case is, whether at the sale of the land under execution, as the property of the defendant in *fi. fa.* the grant not having then issued, the purchaser acquired a title.

Our opinion is that he did not, because the defendant in execution had no interest in the land which was subject to levy and sale.

All the interest he had in it, was the equitable right to acquire a title by paying the grant fees and taking a grant. That was

not done at the time of the sale.    The State had not at that time
parted with the title.    She had the sovereign right to it.    The
subjecting of the land to lottery was in the nature of a contract
between the State and the drawer; by virtue of which, the State
retaining the title, consented to convey it to the drawer, upon
payment of a certain sum as a grant fee.    The payment of this
fee was a condition precedent to his getting a title.    Whilst that
was unpaid, he had no title ; it was still in the State—nor had
he an interest in the land, springing out of any advances, or
money expended.    His only right was the right to acquire a
title by fulfilling a prescribed condition.    That right, it is per-
fectly obvious, is not such an interest as was the subject-matter of
a levy, and therefore the purchaser got no title whatever.    These
doctrines were settled by this Court in the case of *Carter vs. Brins-
field*, 2 *Kelly*, 143.    The case of *Winter vs. Jones*, does not con-
flict with that case, nor with the decision we now make.    Under
the lottery laws, the price required to be paid for the grant is the
consideration received by the State, and was not intended alone
to cover the expense of issuing the grant, and other incidental
expenses of the lottery.    It was the sole consideration of the
contract.    The obligation to convey to the drawer, did not ex-
ist until that was paid.    *Winter vs. Jones*, did not originate un-
der the lottery laws, but under the laws for the *sale* of fractions.
In that case, we held that the purchaser having paid the pur-
chase money, acquired a title, although the grant had not issued,
which the State could not divest by a subsequent sale.    It is
true, that in that case, the State required $4 50 cts. to be paid
for the grant, but that sum constituted no part of the considera-
tion of the contract, and was required only to defray the ex-
pense of perfecting the title; an expense which, in the absence of
a stipulation to the contrary, would have devolved upon the
purchaser, without this statutory requirement.    *Sug. on Vend.*.
296.

The decision in this case is in accordance with Legislative
construction.    As early as 1821, a law was passed *authorizing*
judgment creditors and plaintiffs in attachment to take out
grants to land drawn by the defendant, in order to subject it,

*Prince*, 552.    By the Act of 1826, plaintiffs in execution who had granted lands under the Act of 1821, are authorized to retain the price of the grant out of the proceeds of the sale, in preference to any other lien whatever.    (*Cobb's New Dig.* 690.)

And by the Act of 1833, Sheriffs and other officers are forbid to levy upon and sell lands which are ungranted.    *Prince*, 565.

From all of which, it is to be inferred, that the Legislature believed that the title to lands drawn under the Lottery Acts, was in the State, until the grant issued.

Let the judgment be reversed.