McDANIEL *et al. v.* MITCHELL *et al.*
BRAY *et al.,* executors, *v.* McDANIEL *et al.*

1. The evidence being conflicting, and that introduced in behalf of the defendants being sufficient to warrant the verdict; and it not being at all probable that the newly discovered evidence would change the result, this court will not interfere with the discretion of the trial judge in refusing to grant a new trial.

2. Where an equitable petition, filed for the purpose of obtaining specific performance of an alleged-parol contract for the sale of land, was met by answers setting forth facts showing that the plaintiffs were not entitled to the relief prayed for, but containing no prayer for affirmative or specific relief against the plaintiffs, and there was a general verdict for the defendants, upon which a judgment for costs was entered against the plaintiffs, it was not error to deny a motion subsequently filed by the defendants to so amend this judgment as to make it adjudge that the title to the land in controversy was in one of the defendants, and direct that a writ of possession do issue in his favor.

November 12, 1894.

Equitable petition, etc. Before Judge LUMPKIN. Fulton superior court. March term, 1894.

W. T. MOYERS, for plaintiffs. MARSHALL J. CLARKE and DORSEY, BREWSTER & HOWELL, for defendants.

LUMPKIN, Justice.

Ed. Wilson McDaniel and others filed a petition against Alexander W. Mitchell *et al.,* the chief object of which was to obtain a decree for the specific performance by Mitchell of a parol contract for the sale by him of a tract of land to the father and mother of the plaintiffs. They allege that Mitchell agreed to sell the land to their parents for $300.00, to be paid in money or work, immediate possession to be given them, and a deed to be

made on payment; that possession was accordingly given them; that they remained on the land till they died; that plaintiffs have occupied it ever since; and that the purchasers fully complied with their agreement. Plaintiffs further alleged that they demanded a deed of Mitchell, and that he refused to make one; that in the spring of 1889, they informed one of the defendants, John T. Backus, of their rights in the land, but that he, about two months later, having bought the land from Mitchell, took forcible possession of a part of it; that Mitchell now claims title under a tax sale, and that on August 14, 1889, he sued out a dispossessory warrant against two of the plaintiffs, and on August 20, 1889, Backus sued out a dispossessory warrant against one of the plaintiffs as a tenant of his who refused to pay rent. Plaintiffs denied that they had ever been tenants of either Mitchell or of Backus, but alleged that they were too poor to give the bonds necessary to resist the proceedings instituted to dispossess them. The prayers were, that Mitchell be decreed to make them a deed; that the land seized by Backus be restored; that Mitchell's tax deed be cancelled, and that he and Backus be enjoined from prosecuting their dispossessory proceedings.

The defendant Mitchell, in his answer, denied that he ever made a contract with the mother and father of plaintiffs for a sale to them of the land, and denied that they had ever paid him any purchase money. He admitted that the parents had possession as alleged, and that plaintiffs have had possession as alleged; but averred that such possession was merely permissive. He denied that plaintiffs ever demanded a deed of him, or that he claims title under a tax sale. He further answered, that he sold to the defendant Backus, December 24, 1888, and notified plaintiffs of the sale, and that they agreed to surrender possession whenever required. He explained, further, that the dispossessory warrant was sworn out under a mistake of law, and had been dismissed.

The defendant Backus answered that when he sued out the dispossessory warrant mentioned by plaintiffs, they were his tenants under a contract of rent which expired about two months before. He averred that he bought the land from Mitchell, December 24, 1888, without any notice of plaintiffs' claim; that he received a deed in July, 1889; that soon after buying, he took possession of the south half without objection from plaintiffs, and built two houses upon it; that in July, 1889, he consented for plaintiffs to remain on the land till August, 1884, and that they having failed to pay rent, he resorted to the dispossessory proceedings.

Mitchell died pending the suit, and Bray *et al.*, as his executors, were made parties defendant. There was a general verdict in favor of the defendants. The plaintiffs moved for a new trial on the grounds that the verdict was contrary to law and the evidence, and because of certain newly discovered evidence. The judgment of the court below overruling their motion is the error complained of in the first of the above stated cases.

The evidence was decidedly conflicting, but that introduced by the defendants was amply sufficient to sustain the finding in their favor, and therefore this court cannot interfere with the discretion of the trial judge in refusing to set the verdict aside as being contrary to the law and evidence.

The evidence for the plaintiffs consisted largely of alleged admissions made by Mitchell. The newly discovered evidence related to still another alleged admission on his part, tending to show that the plaintiffs were entitled to the premises in dispute; but even if this evidence had been introduced at the trial, we do not think it in the least degree probable that the result would have been different, and consequently a new trial on the ground of newly discovered evidence cannot properly be granted. This disposes of the first case.

On the day the verdict for the defendants was rendered, a judgment for costs was entered in their favor. At the next term of the court, the defendants filed a motion to amend the judgment so as to adjudge that the title to the premises was in Backus, and direct that a writ of possession do issue in his favor. The motion was denied, and the judgment denying it is the error assigned in the bill of exceptions sued out in the second of the above stated cases.

From the preceding statement of the pleadings, it will be observed that neither of the answers contains a prayer for affirmative or specific relief of any kind against the plaintiffs. The answers are, in effect, a mere general denial of the plaintiffs' cause of action, without more. While it may have been perfectly proper and germane for the defendants to have prayed for the relief sought by the motion they afterwards made to amend the judgment, yet, as they did not do so, we are unable to perceive either how the jury could have found they were entitled to this relief, or the court could have so adjudged. There was nothing in their pleadings to authorize a verdict or judgment of this kind. It is a fundamental principle that all judgments must be based on proper pleadings, and that all judgments must follow the verdicts upon which they are founded. If the defendants could not, at the term when the case was tried, have had a verdict for the particular relief in question, they could not, of course, either then or subsequently, obtain such relief by a mere motion to amend the general judgment for costs which had been entered up in their favor.

With the utmost respect for the able and distinguished counsel who so earnestly insisted before this court that the allowance of the motion would have been proper, and that the refusal to allow it was erroneous, we are unable to bring our minds to take this view of the mat-

ter. The only thing that could make us entertain the least doubt that the denial of the motion was correct, is the fact that so accurate and profoundly learned a jurist as he sincerely entertained an opinion differing from our own.    *Judgment in each case affirmed.*