No. 76.—CURTIS PETERSON, plaintiff in error, *vs.* MARGARET A. ORR, defendant.

[1.] A Court of Equity will not interfere to restrain a trespass, by injunction, unless it be destructive to the very nature and substance of the estate, or unless irremediable mischief would ensue, unless immediate relief was granted; or where, from the difficulty of the proof, or some other peculiar circumstance, this conservative remedy is imperatively demanded.

[2.] A purchaser of land, under a bond for titles, who has paid the purchase money and gone into possession, holds a legal title.

[3.] The distinction between a legal and an equitable title, consists in the payment or non-payment of the purchase money.

In Equity, in Randolph Superior Court. Decision by Judge TAYLOR.

For the facts of this case, see the decision of the Court.

MORETON and DEVON, for plaintiff in error.

BARRY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This was an application for an injunction, upon the fol-

lowing statement of facts, in the bill exhibited to the Chancellor:

On the 4th of August, 1851, Margaret A. Orr sold to William T. Cooper lot No. 253 in the 8th district of Randolph County, containing 202 and one-half acres, and made to him a bond conditioned to execute titles the 25th day of December next ensuing, provided he paid, at that time, his note of $400, given for the purchase money. On the 17th day of November, 1851, Cooper sold the land to Curtis Peterson, the complainant, for $500, $400 of which was to be paid at the same time that his note fell due, and the remaining $100, twelve months thereafter. Cooper executed his bond for titles to Peterson. Cooper's note to Mrs. Orr was placed in the hands of one Daniel Morris; and Peterson's note for $400, was substituted by Cooper for his, which was duly discharged by Peterson, and he took a transfer of Mrs. Orr's bond from Cooper, so that the entire purchase money was paid to Mrs. Orr for the land; and Peterson held not only the bond of Cooper, but likewise the bond of Mrs. Orr to Cooper, to make titles, and under these he held possession of the premises.

Now the bill alleges, that having repaired the fencing, manured the land, and made a crop of cotton and other produce, besides having expended considerable labor in preparing to erect a sawmill, Mrs. Orr forcibly entered upon the premises, appropriated the grown crop, and prevented him from carrying out his arrangements with regard to the mill, &c., and that she is offering to sell the land, and threatens that she will do so, provided an opportunity occurs; and the complainant invokes the powers of Chancery to restrain her against these actual and menaced grievances. Is he entitled to it?

That the trespasses complained of are not of such a character as to authorize the exercise of the extraordinary preventive process of a Court of Equity, we are well satisfied. Our whole train of adjudications upon this subject shows this.

[2.] The only ground upon which Equity would interpose, would be because the legal title to the land was not in Peterson.

The bill seems to have been framed, and the case argued in behalf of the plaintiff in error, upon this hypothesis. Whereas the contrary is most indubitably true.

[3.] The purchase money having been fully paid, and the occupancy acquired, the title was converted from an equitable into a legal title ; and Peterson may resort to his action of ejectment, trespass or any other remedy to which, as owner, he may be entitled, for the protection of his property.

And as to the threat of Mrs. Orr to sell the land, it is a mere *brutum fulmen*—a harmless thunderbolt—an ineffectual menace—mere sound, signifying nothing. She is incapable of conveying, or a purchaser from deriving a title, under the circumstances of this case, from her.

Let the judgment be affirmed.